Dear Mr. Harris:
You have requested an opinion of this office regarding Act 1315
of the 1995 Regular Session which enacted La. R.S. 24:513.3. Your request, as I understand it, is as follows:
 1. Does La. R.S. 24:513.3 prohibit the Legislative Auditor and his employees from participating in charitable gaming activities, such as church or school-sponsored bingo and raffles?
Act 1315 of the 1995 Regular Session enacted La. R.S. 24:513.3
which provides in pertinent part as follows:
. . .
 F. (1) The legislative auditor shall adopt a code of ethics for himself and his employees.
 (2) Ethics codes adopted by the legislative auditor shall include but not be limited to the Code of Governmental Ethics and shall contain the following:
 (a) The legislative auditor and his employees shall not be permitted to engage in gaming activities in an establishment licensed by a gaming industry regulator, except in the course of the person's duties. (Emphasis added)
. . .
The term "gaming industry regulator" as defined in Subsection B. (2) means "the Department of Revenue and Taxation, the Department of Public Safety and Corrections, the Riverboat Gaming Commission, the Louisiana Economic Development and Gaming Corporation, any successor boards, commissions or departments which are formed to regulate the gaming industry in Louisiana and their representatives."
The Division of Charitable Gaming Control of the Office of State Police as organized within the Department of Public Safety and Corrections (hereinafter "Division") was statutorily created to regulate the conduct of charitable games of chance in the state of Louisiana, including all licensing and enforcement functions. (See La. R.S. 36:408)
Pursuant to the Charitable Raffles, Bingo and Keno Licensing Law, La. R.S. 33:4861.1 et seq., which is a statutory exemption to the provisions of La. R.S. 14:90, the Division licenses charitable organizations, commercial lessors, manufacturers and distributors of gaming supplies and equipment and private casino contractors. Any non-profit charitable organization domiciled in this state and qualified with the United States Internal Revenue Service for tax exempt non-profit status under Section 501 (c), (3), (4), (5), (6), (7), (8), (10) or (19) of the Internal Revenue Code may be licensed by the Division to conduct charitable gaming activity in this state. Pursuant to La. R.S. 33:4861.4 (C), Mardi Gras carnival organizations, civic or service associations, volunteer fire companies, booster clubs, and parent-teacher associations may also be licensed by the Division to conduct gaming activity if certain criteria are met without the requirement of tax exempt status.
You have stated in your request that churches and schools are not establishments licensed by a gaming industry regulator. However, this is not correct. Any church or school may obtain a charitable gaming license from the Division if it meets the criteria of the Act and the administrative rules and regulations of the Division. The gaming license is issued by the Division to the organization and not to any individual members of the organization. The license, as approved by the Division, regulates the type of gaming activity which may be conducted by the organization as well as the specific date(s) and location(s) where the gaming activity may be conducted. Any church or school that is approved for a charitable gaming license could conduct gaming activity at its establishment or at a commercial or other non-commercial establishment.
The licensed charitable gaming activity conducted at a church or a school is no different than that conducted at a commercial or other non-commercial establishment. The only distinction between a church or school which conducts gaming activity at its establishment and a commercial lessor is that the latter is specifically authorized to lease its premises to other licensed charitable organizations to conduct gaming activity. In fact, a church or school may be qualified with the Division as a non-commercial lessor and lease its establishment to other charitable organizations to conduct gaming activity. Therefore, there appears to be no apparent reason to make a distinction between the types of establishments at which charitable gaming activities are conducted.
The term "establishment" is not defined at La. R.S. 24:513.3. Webster's II New Riverside University Dictionary defines "establishment" to mean " . . . 2. a. A business firm, club, institution or residence, including its members or occupants. b. A place of business including its possessions and employees. c. An organized group, as a government, political party or military force. 3. An established church . . ." Therefore, this term would clearly seem to include churches and schools licensed by the Division to conduct charitable gaming activity.
Considering the foregoing, it is the opinion of this office that La. R.S. 24:513.3 prohibits the legislative auditor and his employees from participating in charitable gaming activity, including church or school-sponsored bingo and raffles which are conducted at a church or school establishment or at any commercial or non-commercial establishment.
You have further requested an opinion as to whether La. R.S.24:513.3 prohibits the legislative auditor and his employees from participating in church or school-sponsored raffles. It would not appear inappropriate for the legislative auditor or the employees thereof to sell raffle tickets for a licensed charitable organization as long as the raffle tickets are sold away from the grounds of the licensed establishment. However, it would appear to be a violation of La. R.S. 24:513.3 in the event the legislative auditor or his employees sold raffle tickets at the licensed establishment, i.e., church or school grounds or participated in the drawing of the winning raffle ticket at such an establishment.
We refrain from addressing any inquiries concerning the Code of Governmental Ethics, La. R.S. 42:1101 et seq. The Code is interpreted by the Commission on Ethics for Public Employees and any questions which relate to the Code must be directed to that Commission.
Hopefully this opinion addresses your questions. Please feel free to call if this office may be of further assistance.
Yours very truly,
 RICHARD P. IEYOUB Attorney General
By: _____________________
 BRUCE G. MOHON Assistant Attorney General